IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEOVANI MIGUEL FLORES,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER CONTINUING TRIAL AND EXCLUDING TIME UNDER THE SPEEDY TRIAL ACT**<br><br>Case No. 4:19-cr-00093-DN-1<br><br>District Judge David Nuffer |

This Order Continuing Trial and Excluding Time Under the Speedy Trial Act is entered in response to the unrelenting persistence of the Coronavirus Disease ("COVID-19") in the District of Utah. It takes the unprecedented step of continuing a criminal trial without setting a new trial date.

## Coronavirus Pandemic

On March 13, 2020, a National Emergency was declared in response to the nationwide outbreak, which the World Health Organization has declared a global pandemic. Global COVID-19 cases and deaths have been steadily rising.

The United States has more COVID-19 cases than any other country. Deaths and cases within the United States continue to increase daily. By some reports, the current COVID-19 deaths are underreported at 220,000, because the U.S. in 2020 has had 300,000 more deaths than in a typical year.





The Centers for Disease Control and Prevention ("CDC") has issued guidance to combat the spread of COVID-19, and to promote the health and well-being of the nation.[1] This guidance includes recommendations that all Americans wash hands frequently, avoid close contact with others (*i.e.*, being within six feet), wear cloth face coverings in public or when around others, avoid large gatherings, and self-isolate if exposed. Despite this guidance, abundant news reports show violations of these guidelines, protests against them, and repudiation of the supporting science. More importantly, the rising caseloads show the guidance is not being followed.

In Utah, measures to contain the virus have so far been ineffective. While a decrease in cases was seen in August, cases are now rising at an alarming rate to their highest levels yet.



After July's peak, a target of 400 cases per day was set – and briefly achieved – but then dwarfed by recent high daily case rates of 3,000 or more. The public may tolerate this "new normal," but hospital and ICU bed capacities are limited, and already exceeding acceptable percentages.

With schools in session, fall vacation breaks, upcoming holidays, more time indoors where the virus is more likely to spread, and colder weather which may sustain virus life, prospects for improvement are dimming. The State has, however, seven months into the

---

[1] This guidance evolves, because the science on the virus is evolving. For example, recently CDC revised its guidance on the "close contact" that may risk infection, and the Mayo Clinic advises that the long-term effects of a COVID-19 infection are not fully known.

pandemic, finally implemented a new management plan requiring masks in high transmission areas.

## The Effect of the Pandemic on Justice

Government officials who regulate health practices speak of the economy, new infections, hospital beds, and deaths, but at least in any reported remarks do not mention the denial of rights to defendants awaiting trial. So long as this pandemic continues at this pace, there is no feasible way for a criminal defendant to exercise the constitutional right to jury trial. The courts cannot compel citizens to appear for jury service – and attorneys, witnesses, defendants, and others – when assembly for a prolonged period, in an enclosed space, is unsafe. And the government and public are not acting in ways to create safety. As a result, only one criminal jury trial has been held in the State of Utah – in State Court – since the pandemic hit.

Many defendants are in pretrial detention. All defendants have the cloud of unresolved criminal charges. Victims are denied their right to a day in court. The justice system is clogged as new cases arise while old cases are still on the dockets. The pandemic's effect on criminal justice is unparalleled, and denies citizens the fundamental constitutional right to trial, even though many preliminary criminal matters are permitted to occur by video under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").

Civil cases are also delayed. Government leaders say keeping business open is a goal, but civil trials are suspended as long as the case counts continue to indicate that trials cannot be conducted safely. This certainly affects businesses and the economy, as civil cases cannot be resolved with jury trials. Fortunately, bench civil trials and hearings are occurring by video.

Criminal and civil justice impairments are certainly not the most immediate or important effects of the pandemic, but the lack of official and public attention to the problem is disturbing. The courts, where citizen's rights and responsibilities are adjudicated, deserve more attention

from government and citizens. Courts are powerless to set policy, and must operate within it, while the policy makers and influencers do not prioritize the impact on the judicial system.

**The Court Response**

In response to the pandemic, the Court has attempted to comply with health regulations in limiting activities, and has stayed aware of the local statistics and trends. The District of Utah COVID-19 Information Center summarizes the status of the court buildings and civil and criminal proceedings, with provisions for media and public access to hearings, which are generally conducted online. That page also lists the many General Orders issued by the Court to adjust to the changing pandemic conditions. These General Orders also contain important fact findings about the pandemic

Chief Judge Robert J. Shelby has issued several General Orders governing aspects of court operations in response to the outbreak of COVID-19 in the District of Utah including:

- General Order 20-008 placed restrictions on visitors to the District's courthouse effective March 12, 2020, until further order.

- General Order 20-010 modified court operations for some criminal proceedings and offender supervision, as well as providing certain protections for attorney-client communications impacted by the COVID-19 crisis effective March 23, 2020, until further order.

- General Order 20-011 expanded video and teleconferencing capabilities for many criminal proceedings under the CARES Act effective March 31, 2020, and continuing for 90 days. This order has been extended by General Order 20-020 and General Order 20-028.

The latter orders under the CARES Act have been the most important for court continuing court operations. The CARES Act authorized certain criminal proceedings to occur by video with the defendant's consent. This authorization plunged the court into video technology which is now extensively used for some criminal and most civil proceedings. But criminal trials may not constitutionally proceed by video, so the CARES Act has not enabled some of the most fundamental constitutional rights to be exercised.

The Court has made diligent preparations for resumption of in person proceedings including jury trials. Plexiglass barriers for in person hearings have been installed in all courtrooms, and two courtrooms in Salt Lake City and one in St. George are fully outfitted with barriers for jury trials. Signage has been installed, and restrictions on courthouse entry are in place. A mock jury orientation, selection, and trial was conducted so that the court and personnel are ready – when the pandemic danger subsides enough to permit jury trial. A plan for resumption of jury trials, with many exhibits, has been posted by the court.

When Utah's case count was declining, the Court posted information on Resumption of Certain In-Person Court Proceedings consistent with plan for phased reopening outlined in General Order 20-021.  The plan criteria permitted the Court to enter Phase I on September 1, 2020, and resume "critical" in-person hearings in civil and criminal cases. The criteria include:

(1) No COVID-19 confirmed or suspected cases in the court facility within a 14-day period, or if a confirmed or suspected case has occurred, there has been a "deep cleaning" of exposed areas and applicable employee self-quarantine actions have been taken;

(2) Sustained downward trending average of cumulative daily COVID-19 case counts in the District over a 14-day period; and

(3) Recission of local restrictions on movement and/or shelter in place orders.

Criminal jury trials could begin on a limited basis if we can achieve Phase II. To enter Phase II, the above three criteria must be satisfied again. The current levels of cases, many times greater than the case counts in August, 2020; poor public compliance with public health recommendations; schools in session; fall vacation breaks; upcoming holidays; more time indoors where the virus is more likely to spread; and colder weather which may sustain virus life, all make it unlikely that the Court will enter Phase II anytime soon.

Due to the deteriorating health statistics, the most recent General Order from Chief Judge Robert J. Shelby generally suspends in person proceedings and trials until after January 31, 2021.

This is the latest in a long series of General Orders which have included findings and conclusions for an "ends of justice" exclusion of time under the Speedy Trial Act[2] for all criminal cases in the District.[3] We can anticipate further extensions of closure of the court to criminal trials.

## Exclusion of Time under the Speedy Trial Act

An "ends of justice" exclusion of time under the Speedy Trial Act is disfavored and "was meant to be a rarely used tool for those cases demanding more flexible treatment."[4] However, based on the ongoing nature of the COVID-19 outbreak in the District, the effect of national and local public health recommendations and directives, and Chief Judge Shelby's General Orders, it is necessary and appropriate to continue trial in this case and exclude time under the Speedy Trial Act using an "ends of justice" exclusion.

---

[2] 18 U.S.C. § 3161(h)(7)(A).

[3] General Order 20-009 postponed most civil and criminal proceedings, and included findings and conclusions for an "ends of justice" exclusion of time under the Speedy Trial Act for all criminal cases in the District from March 16, 2020, through May 1, 2020.

General Order 20-012 extended the postponement of most civil and criminal proceedings to June 15, 2020, and included findings and conclusions for an "ends of justice" exclusion of time under the Speedy Trial Act for all criminal cases through June 15, 2020.

General Order 20-017 extended the postponement of most civil and criminal proceedings to August 1, 2020, and included findings and conclusions for an "ends of justice" exclusion of time under the Speedy Trial Act for all criminal cases through August 1, 2020.

General Order 20-021 extended the postponement of most civil and criminal proceedings to September 1, 2020, and included findings and conclusions for an "ends of justice" exclusion of time under the Speedy Trial Act for all criminal cases through September 1, 2020.

General Order 20-026 extended the postponement of most civil and criminal proceedings to October 1, 2020, and included findings and conclusions for an "ends of justice" exclusion of time under the Speedy Trial Act for all criminal cases through October 1, 2020.

General Order 20-029 extended the postponement of most civil and criminal proceedings to November 2, 2020, and included findings and conclusions for an "ends of justice" exclusion of time under the Speedy Trial Act for all criminal cases through November 2, 2020.

General Order 20-030 extended the postponement of most civil and criminal proceedings through February 1, 2021, and included findings and conclusions for an "ends of justice" exclusion of time under the Speedy Trial Act for all criminal cases through February 1, 2021.

[4] *United States v. Toombs*, 574 F.3d 1262, 1269 (10th Cir. 2009).

Courts and court operations are necessarily social operations, involving many people. The Court's ability to obtain an adequate spectrum of jurors and available counsel, witnesses, and court personnel to be present in the courtroom for trial is significantly reduced by the pandemic and health agency requirements. Empaneling a jury, conducting a trial, and arranging jury deliberations, with due regard for health and safety, considering the broad spectrum of participants and their contacts outside the court, is not currently possible in the physical facilities available to the court. Long exposure in confined spaces, which is inherent in trial, increases risk of infection. Video and audio conferencing, used for hearings, are not available for criminal trials. Counsel's ability to adequately prepare for trial, including locating and consulting with witnesses, and defense counsel's ability to confer with Defendant, under these circumstances is also greatly reduced. The need to protect the health of the public and trial participants, including the Defendant, during a deadly pandemic outweighs the rights of Defendant and the public to a speedy trial.

Failure to continue trial under these circumstances would result in a miscarriage of justice[5] and would deny counsel for the government and Defendant the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.[6] Therefore, the ends of justice served by such a continuance outweigh the best interests of the public and Defendant in a speedy trial.[7] This continuance is not predicated on general congestion of the court's calendar or lack of diligent preparation by counsel.[8]

---

[5] 18 U.S.C. § 3161(h)(7)(B)(i).

[6] *Id*. § 3161(h)(7)(B)(iv).

[7] *Id*. § 3161(h)(7)(A).

[8] *Id*. § 3161(h)(7)(C).

### New Trial Date Undetermined

The trial in this case has been reset many times as the court closures have been extended. This has resulted in wasteful preparation followed by cancellation and frustration, burdening counsel and the court, giving false hopes to victims, defendants, families, counsel, and others.

The Speedy Trial Act generally requires that cases be set for trial "on a day certain,"[9] and that has always been the practice of the Court. But to avoid setting and resetting trial dates each time the court closure is extended, this trial will be set only when the court re-opens for trials. This unusual practice is required by the unusual times.

The parties have indicated that 120 days after the court is open for trials are needed to prepare for trial, using reasonable diligence, to allow witness and defendant contact, and other preparation.[10] When the court re-opens, a notice will issue setting the trial in this case on a date 120 days after the court is open for trials.

---

[9] *Id.* § 3161(a).

[10] Joint Status Report, docket no. 74, filed May 14, 2020.

## ORDER

IT IS HEREBY ORDERED the 2-day jury trial previously scheduled to begin on December 1, 2020, is vacated, along with all trial related dates, including the final pretrial. When the court re-opens, a notice will issue setting the trial in this case on a date 120 days after the court is open for trials. Accordingly, the time from the entry of General Order 20-009, March 16, 2020, and the new trial date is excluded from Defendant's speedy trial computation for good cause.

Signed November 30, 2020.

BY THE COURT

David Nuffer
United States District Judge